**United States District Court**
For the Northern District of California

1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                   NORTHERN DISTRICT OF CALIFORNIA
7
8   MILAN PAUL PAKES,                        No. C-04-5294 VRW (EMC)
9              Petitioner,
                                             **REPORT AND RECOMMENDATION**
10        v.                                 **RE PETITIONER'S PETITION FOR**
                                             **WRIT OF HABEAS CORPUS**
11  JAMES A. YATES,
                                             **(Docket No. 1)**
12             Respondent.
    _____/
13
14
15        Petitioner Milan Paul Pakes has filed a petition for writ of habeas corpus seeking to overturn

16  his conviction for felony endangerment of a minor, *see* Cal. Pen. Code § 273a(a), in Santa Clara

17  Superior Court.  Mr. Pakes argues that ineffective assistance of trial counsel Miguel Chacon led him

18  to plead guilty to the offense, which became his third "strike" under California Penal Code § 667 for

19  sentencing purposes.  On September 27, 2006, Judge Walker issued an order referring the matter to a

20  magistrate judge for an evidentiary hearing to determine (1) whether Mr. Pakes received

21  constitutionally deficient advice from Mr. Chacon and (2) whether Mr. Pakes was prejudiced by the

22  advice.  In the referral, Judge Walker also instructed that the magistrate judge should prepare

23  proposed findings of fact and recommended disposition of the issues identified in his September 27

24  order.

25        Having considered the evidence presented, both testimonial and documentary, as well as all

26  other evidence of record and the argument of counsel, the Court hereby recommends that Mr.

27  Pakes's petition be **GRANTED**.

28

**United States District Court**
For the Northern District of California

1

## I.   FACTUAL BACKGROUND & PROCEDURAL HISTORY

2  A.      Events Leading to Mr. Pakes's Conviction

3          The following factual background is reflected in Judge Walker's order of September 27,

4  which found that Mr. Pakes was entitled to an evidentiary hearing.  At the time of the events that led

5  to the conviction of Mr. Pakes, he was on parole for two counts of committing lewd and lascivious

6  acts with a minor.  *See* Docket No. 10, Ex. 1 (CT 127-28); *see also id.* (CT 118-19).  Mr. Pakes was

7  subject to a special parole condition under which he was not permitted to be alone with a minor

8  female.  *See id.* (CT 119).  Mr. Pakes had already suffered two parole violations unrelated to the

9  special condition: one in February 2000 for possession of a syringe/needle and possession of a

10  marijuana cigarette and another in September 2001 for a positive urine specimen for cocaine usage.

11  *See id.* (CT 128).

12          At the preliminary examination of Mr. Pakes, evidence was presented concerning the events

13  that led to his conviction.  That evidence -- consisting largely of the testimony of Adriene Doe,

14  Officer David Gonzalez, and Sgt. Robert St. Amour -- reflected the following.

15          Mr. Pakes met Adriene Doe, then twelve years old, at a swimming pool in the summer of

16  2001.  *See* Resp.'s Ex. 2 (Prelim. Exam. at 5-7) (testimony of Adriene).  Mr. Pakes befriended

17  Adriene as well as her family and visited their house daily.  *See id.* (Prelim. Exam. at 8-9).  That

18  summer, Mr. Pakes started to teach Adriene how to drive by letting her drive his truck around the

19  streets of the mobile home park where he and her family lived.  *See id.* (Prelim. Exam. at 9-11)

20  (testimony of Adriene).  The seatbelts in the truck did not work.  *See id.* (Prelim. Exam. at 10, 12)

21  (testimony of Adriene).  During one of the driving lessons, Mr. Pakes asked Adriene for a kiss on

22  the cheek.  *See id.* (Prelim. Exam. at 12-13) (testimony of Adriene).  Adriene refused.  *See id.*

23  (Prelim. Exam. at 13) (testimony of Adriene).

24          Several months later, in December 2001, Mr. Pakes was visiting Adriene and her family and,

25  when her parents were out of the room, he gave her some money.  *See id.* (Prelim. Exam. at 14-15)

26  (testimony of Adriene).  Mr. Pakes told Adriene not to tell anyone because he was afraid that they

27  would ask him for money.  *See id.* (Prelim. Exam. at 15) (testimony of Adriene).

28

**United States District Court**
For the Northern District of California

Soon thereafter, on December 15, 2001, Mr. Pakes asked Adriene to accompany him to a chimney-sweeping job at a private residence. *See id.* (Prelim. Exam. at 16-17) (testimony of Adriene). The two drove to the work site in Mr. Pakes's truck which did not have working seatbelts. *See id.* (Prelim. Exam. at 17) (testimony of Adriene). Adriene helped Mr. Pakes load and unload the truck, for which Mr. Pakes paid her $10. *See id.* (Prelim. Exam. at 18-10) (testimony of Adriene).

On the way back to Adriene's house, Mr. Pakes was driving northbound on Highway 87 in San Jose, California. *See id.* (Prelim. Exam. at 19) (testimony of Adriene); *id.* (Prelim. Exam. at 49) (testimony of Officer Gonzalez). Mr. Pakes rear-ended a sports utility vehicle, which was being driven by an off-duty police officer, David Gonzalez. *See id.* (Prelim. Exam. at 49-50) (testimony of Officer Gonzalez). According to Officer Gonzalez, he started to pull off on the shoulder of the highway to exchange information and find out how badly his car was damaged. *See id.* (Prelim. Exam. at 50) (testimony of Officer Gonzalez). "And then the car that hit me kept -- pulled up alongside me, because I pulled to the left shoulder of the road. I looked over, pointed at him and said, are you going to pull over, and he just kind of said, oh, yeah, I'm going to pull over, hold on. He had his window rolled down, and then just sped off." *Id.* (Prelim. Exam. at 50) (testimony of Officer Gonzalez).

Officer Gonzalez called the police dispatch from his cell phone and asked for assistance in stopping the driver who had hit him. *See* Resp.'s Ex. 2 (Prelim. Exam. at 52) (testimony of Officer Gonzalez). Mr. Pakes drove away from the scene of the accident at 50 mph on the left shoulder, with Officer Gonzalez following at 35 mph. *See id.* (Prelim. Exam. at 51) (testimony of Officer Gonzalez). When traffic started to clear up, Mr. Pakes pulled back on to the highway, driving at a much faster speed than the speed of traffic, and started making unsafe lane changes, cutting other drivers off. *See id.* (Prelim. Exam. at 52-53) (testimony of Officer Gonzalez). At some point, Mr. Pakes merged from Highway 87 on to southbound Interstate 280, where he continued to make unsafe lane changes. *See id.* (Prelim. Exam. at 53-54) (testimony of Officer Gonzalez). Mr. Pakes then exited at Seventh Street. *See id.* (Prelim. Exam. at 54) (testimony of Officer Gonzalez).

**United States District Court**
For the Northern District of California

1    At the beginning of the chase, Mr. Pakes told Adriene to duck down.  *See id.* (Prelim. Exam.

2    at 21, 25) (testimony of Adriene).  During the chase, Adriene repeatedly told Mr. Pakes to take her

3    home and to stop.  *See id.* (Prelim. Exam. at 21-23) (testimony of Adriene).

4    While Officer Gonzalez was following Mr. Pakes, Sgt. Robert St. Amour was monitoring the

5    police radio and heard the broadcast about the hit-and-run involving Mr. Pakes and Officer

6    Gonzalez.  *See id.* (Prelim. Exam. at 59-60) (testimony of Sgt. St. Amour).  According to Sgt. St.

7    Amour, he was the first officer in a marked police car to observe Mr. Pakes's truck.  *See id.* (Prelim.

8    Exam. at 60) (testimony of Sgt. St. Amour).  However, Adriene testified that there was more than

9    one marked police involved in the chase.  *See id.* (Prelim. Exam. at 23-24) (testimony of Adriene).

10   Sgt. St. Amour saw Mr. Pakes's truck going the wrong way on a one-way street, *i.e.*,

11   northbound on southbound Second Street.  *See id.* (Prelim. Exam. at 60) (testimony of Sgt. St.

12   Amour).  According to Adriene, while Mr. Pakes was driving the wrong way on the one-way street,

13   there was oncoming traffic -- "two or three cars coming" -- and Mr. Pakes had to swerve to avoid

14   the cars.  *See id.* (Prelim. Exam. at 24-25) (testimony of Adriene).  Sgt. St. Amour, however, did not

15   mention any oncoming traffic or any near crash.  According to Sgt. St. Amour, when he saw Mr.

16   Pakes's truck, he turned "onto Keyes from Monterey, which is the next street to the left of 2nd

17   Street," activated his red lights and siren, and placed his police car "somewhat in [the] path of the

18   pickup [truck] to stop [Mr. Pakes] from going further northbound against traffic [on Second].  [Mr.

19   Pakes] bypassed me, made a right turn between the curb and my vehicle onto Keyes Street."  *Id.*

20   (Prelim. Exam. at 60) (testimony of Sgt. St. Amour).

21   Sgt. St. Amour pursued Mr. Pakes on Keyes, still using his red light and siren.  *See id.*

22   (Prelim. Exam. at 61) (testimony of Sgt. St. Amour).  Mr. Pakes made a left from Keyes on to

23   northbound Third Street, then made a left on to Virginia, and finally made a left on to southbound

24   Second Street.  *See id.* (Prelim. Exam. at 61-62) (testimony of Sgt. St. Amour).  During this time,

25   Mr. Pakes was driving about 35 mph in a 30 mph zone.  *See id.* (Prelim. Exam. at 63) (testimony of

26   Sgt. St. Amour).  Mr. Pakes eventually pulled his truck over at 868 South Second Street.  According

27   to Sgt. St. Amour, "[Mr. Pakes] drove up onto the curb, parked the vehicle almost on the sidewalk."

28   *Id.* (Prelim. Exam. at 62) (testimony of Sgt. St. Amour).  Mr. Pakes then exited his truck and ran up

United States District Court

For the Northern District of California

1   to the house at 868 South Second Street. *See id.* (Prelim. Exam. at 63) (testimony of Sgt. St.

2   Amour). Sgt. St. Amour parked his police car in front of the truck and ordered Mr. Pakes to stop but

3   Mr. Pakes kept running. *See id.* (Prelim. Exam. at 63) (testimony of Sgt. St. Amour). Sgt. St.

4   Amour chased Mr. Pakes to the stairs of the house where he caught Mr. Pakes and placed Mr. Pakes

5   under arrest. *See id.* (Prelim. Exam. at 63) (testimony of Sgt. St. Amour).

6   B.   State Proceedings

7        The initial complaint filed against Mr. Pakes on December 19, 2001, charged him with two

8   felonies and a misdemeanor. The felonies charged were (1) annoying or molesting a child under age

9   18 in violation of California Penal Code § 647.6(c)(2) and (2) endangering or injuring the health of a

10  child in violation of California Penal Code § 273a(a). *See* Docket No. 10, Ex. 1 (CT 75-76). The

11  misdemeanor charged was hit and run causing property damage, a violation of California Vehicle

12  Code § 20002(a). *See id.* (CT 76). Three prior convictions were also alleged in the complaint, two

13  of which were serious felony prior convictions. *See id.* (CT 76-77). Subsequently, on July 18, 2002,

14  an information was filed charging Mr. Pakes with the same and further charging Mr. Pakes with a

15  felony count for evading the police in violation of California Vehicle Code § 2800.2(a). *See id.* (CT

16  80-83); *see also* Tr. at 157 (testimony of Mr. Chacon).

17       On September 5, 2002, Mr. Chacon filed on behalf of Mr. Pakes a "995 motion"[1] to set aside

18  the first count of the information, which charged Mr. Pakes with a violation of California Penal

19  Code § 647.6(c)(2). *See* Docket No. 10, Ex. 1 (CT 94). A hearing on the motion was held on

20  September 20, 2002, at which time the motion was granted. *See id.* (CT 106).

21       Thereafter, on October 8, 2002, the date set for trial on the case, Mr. Pakes entered a plea

22  bargain pursuant to which he pled guilty to the felony count for child endangerment in exchange for

23  dismissal of the felony count for evasion of the police and the misdemeanor count. *See id.* (CT 109).

24  Mr. Pakes also admitted the three prior convictions. *See id.*

25       Mr. Chacon then filed on behalf of Mr. Pakes a *Romero* motion, *see People v. Superior*

26  *Court (Romero)*, 13 Cal. 4th 497 (1996), asking the court to strike one of his two serious felony prior

27  ──────────────────

28       [1] *See* Cal. Pen. Code § 995 (providing when an indictment or information must be set aside).

convictions.  *See* Docket No. 10, Ex. 1 (CT 112).  The *Romero* motion was denied on April 18, 2003.  *See id.* (CT 151).  That same day, Mr. Pakes was sentenced to 26 years to life.  *See id.* (CT 152).  Mr. Pakes received 25 years to life for his child endangerment conviction and one year for his prison prior.  *See id.*

C.  Federal Habeas Proceedings

In his federal habeas petition, Mr. Pakes argues that he received ineffective assistance of counsel from Mr. Chacon because Mr. Chacon advised him to enter a plea bargain that was of no value to him.  Mr. Pakes contends that the plea bargain was worthless for four reasons:

(1)  As a matter of law, he was not guilty of evading the police under California Vehicle Code § 2800.2(a).

(2)  California Penal Code § 654 would have barred multiple punishment for both evading the police and endangering a child.

(3)  He had a viable defense to the charge of endangering a child (*i.e.*, he could defend by seeking conviction for the lesser-included offense of misdemeanor child endangerment).  *See* Cal. Pen. Code § 273a(a)-(b).

(4)  Mr. Chacon falsely told him that Judge Edward Lee is a lenient judge likely to grant a *Romero* motion (which would result in less than a life sentence) when, in fact, Judge Lee is a harsh judge and there was no chance that Judge Lee or any other judge would grant *Romero* relief given Mr. Pakes's record and the circumstances underlying the current charges.

On September 27, 2006, Judge Walker issued an order granting Petitioner an evidentiary hearing and referring Mr. Pakes's habeas petition to a magistrate judge for an evidentiary hearing on the ineffective assistance of counsel claims.  *See* Docket No. 21.  As discussed below, the detailed analysis of Judge Walker's order established a specific framework for the evidentiary hearing and for the findings and recommendations to be rendered by this Court.

This Court conducted the evidentiary hearing on December 11, 12, and 14, 2006.  The Court heard witnesses who testified in support of Mr. Pakes's case in chief:  Mr. Chacon, Milan Philip Pakes (Mr. Pakes's father), Shawn Pakes (Mr. Pakes's brother), Marilyn Pakes (Mr. Pakes's mother), Mr. Pakes himself, and Allen Schwartz (a criminal defense attorney).  The Court also heard

1    witnesses who testified in support of the state's case in chief:  Mr. Chacon and James Gibbons-

2    Shapiro (the main prosecutor at the trial level).

3        With respect to Mr. Schwartz, Mr. Pakes offered -- and the Court accepted -- him as a

4    *Strickland* expert, *i.e.*, an expert on ineffective assistance of counsel claims.  *See* Tr. at 289.  The

5    Court's acceptance of Mr. Schwartz as such an expert was largely based on his experience as a

6    criminal defense attorney (23 years of practice in Santa Clara County) who has tried approximately

7    75 jury trials, including 25 or so three strike cases and 15-20 two strike cases.  *See* Tr. at 279-80.

8    The Court further noted that Mr. Schwartz has previously been qualified as a *Strickland* expert in

9    Santa Clara Superior Court.  *See* Tr. at 281.

10                    **II.   LEGAL STANDARD**

11       In his September 27 order, Judge Walker set out the legal standard applicable to Mr. Pakes's

12   habeas petition.  As noted by Judge Walker, Mr. Pakes's habeas petition is governed by the

13   Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, a district court

14   may grant a petition challenging a state conviction or sentence on the basis of a claim that was

15   reviewed on the merits in state court only if the state court's adjudication of the claim: "(1) resulted

16   in a decision that was contrary to, or involved an unreasonable application of, clearly established

17   Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision

18   that was based on an unreasonable determination of the facts in light of the evidence presented in the

19   State court proceeding." 28 U.S.C. § 2254(d).  "Where, as here, the state court reached the merits of

20   a habeas petition but provided no rationale for its decision, the [district] court determines whether

21   the state decision was 'objectively unreasonable' based on an independent reading of the record."

22   VRW Order of 9/27/06, at 10 (quoting *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

23       A petitioner asserting a claim of ineffective assistance of counsel must establish two things.

24   First, he must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective

25   standard of reasonableness" under prevailing professional norms.  *Strickland v. Washington*, 466

26   U.S. 668, 687-88 (1984).  Second, he must establish that he was prejudiced by counsel's deficient

27   performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors,

28

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   the result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is a

2   probability sufficient to undermine confidence in the outcome.  *Id.*

3        Where a petitioner claims ineffective assistance of counsel with respect to a guilty plea, he

4   "may generally only attack the voluntary and intelligent character of [the] guilty plea by showing

5   that the advice he received from counsel was not within the range of competence demanded of

6   attorneys in criminal cases."  VRW Order of 9/27/06, at 10 (citing, *inter alia*, *Hill v. Lockhart*, 474

7   U.S. 52, 56 (1985)).  Prejudice is established by a showing that there is a reasonable probability that,

8   but for counsel's errors, the petitioner would not have pleaded guilty and would have insisted on

9   going to trial.  *See Hill*, 474 U.S. at 57-59.  The petitioner need not prove he would have been

10  acquitted at trial.

11              **III.   DEFICIENT PERFORMANCE**

12       Judge Walker's order of September 27 summarizes Mr. Pakes's ineffective assistance claims

13  as follows:

14           Reduced to their essence, petitioner's four arguments each state that
             his trial counsel inaccurately predicted the sentence petitioner would

15           likely receive if he had been convicted at trial compared to the twenty-
             six-to-life sentence he actually did receive in exchange for his guilty

16           plea.

17  VRW Order of 9/27/06, at 11.  As Judge Walker indicated, Mr. Chacon's performance was deficient

18  if these predictions were "'gross mischaracterization[s] . . . combined with . . . erroneous advice on

19  the possible effects of going to trial.'"  VRW Order of 9/27/06, at 11 (quoting *Iaea v. Sunn*, 800 F.2d

20  861, 865 (9th Cir. 1986)).

21  A.    Felony Count for Evasion of the Police (Cal. Veh. Code § 2800.2(a))

22       As Judge Walker noted in his September 27 order, "§ 2800.2 makes it a felony to drive a

23  vehicle in 'willful or wanton disregard for the safety of persons or property' while fleeing or

24  attempting to elude a 'pursuing peace officer' in violation of California Vehicle Code § 2800.1."

25  VRW Order of 9/27/06, at 12 (quoting § 2800.2(a)).  Under § 2800.1, it is a misdemeanor to

26  willfully flee a "pursuing peace officer's motor vehicle" when, *inter alia*, "[t]he peace officer's

27  motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either

28  sees or reasonably should have seen the lamp."  Cal. Veh. Code § 2800.1(a).  Under § 2800.2(b), "a

**United States District Court**
For the Northern District of California

1 willful or wanton disregard for the safety of persons or property includes, but is not limited to,

2 driving while fleeing or attempting to elude a pursuing peace officer during which time either three

3 or more violations that are assigned a traffic violation point count under Section 12810 occur, or

4 damage to property occurs." *Id.* § 2800.2(b).

5   Mr. Pakes argues first that Mr. Chacon's performance was deficient because Mr. Chacon

6 failed to tell him that, as a matter of law, he could not have been convicted of felony evasion of the

7 police, *see* Cal. Veh. Code § 2800.2(a), the charge dropped by the prosecution in exchange for the

8 plea.  The plea bargain was therefore worthless -- *i.e.*, at trial, Mr. Pakes could only have been

9 convicted of felony child endangerment, *see* Cal. Pen. Code § 273a(a), the charge to which he pled

10 guilty.

11   As Judge Walker noted in his order of September 27, the success of this argument largely

12 depends on the definition of "pursuing peace officer" for purposes of § 2800.2(a).  Judge Walker

13 concluded that the state's argument regarding the meaning of "pursuit" was not persuasive.  "[T]he

14 plain meaning of 'pursue' is follow, suggesting a pursuit from behind. . . . [Section] 2800.1(a)(1)'s

15 requirement that the police vehicle's lights be visible 'from the front' would be meaningless if the

16 pursuing vehicle were not actually behind the pursued."  VRW Order of 9/27/06, at 14.  Judge

17 Walker continued: "Assuming that no officers were pursuing petitioner until after he passed St.

18 Amour's roadblock, and because neither party contends that petitioner's driving caused damage to

19 property, a conviction for violating § 2800.2 would only have been possible if petitioner violated

20 three or more provisions leading to a point count under California Vehicle Code § 12810."  VRW

21 Order of 9/27/06, at 14.  Mr. Pakes admitted only two such traffic violations, namely, driving 35

22 mph in a 30 mph zone and failing to restrain a minor in violation of California Vehicle Code §

23 27360.5.  *See* VRW Order of 9/27/06, at 14-15.  The state argued that there were three additional

24 traffic violations, but Judge Walker disagreed.  *See* VRW Order of 9/27/06, at 15-16.  Judge Walker

25 therefore agreed with Mr. Pakes that, given the weaknesses in the prosecution's case, "as a matter of

26 law, convict[ion] [under] § 2800.2 was a long shot on these facts," in particular, if "no officers were

27 pursuing [Mr. Pakes] until after he passed [Sgt.] St. Amour's roadblock."  *Id.* at 14, 16.

28

**United States District Court**
For the Northern District of California

1    At the evidentiary hearing herein, no new facts were introduced.  Despite Adriene's

2  testimony at the preliminary hearing that she and Mr. Pakes were pursued by several police cars

3  prior to Sgt. St. Amour's pursuit, the state did not present any evidence establishing that "'multiple

4  police cars' were pursuing [Mr. Pakes] before he passed [Sgt.] St. Amour's roadblock."[2]  VRW

5  Order of 9/27/06, at 14 (stating that "[t]his factual issue may be further developed at the evidentiary

6  hearing").  Indeed, Mr. Gibbons-Shapiro, the prosecutor at the trial level, admitted that, other than

7  Adriene's uncorroborated testimony, he presented no evidence at the preliminary examination -- nor

8  did he have any evidence in his possession -- which would show that there were other police cars in

9  pursuit.  *See* Tr. at 50 (testimony of Mr. Gibbons-Shapiro).  The police reports filed by the involved

10  officers make no mention of other police cars in pursuit.  *See* Pet.'s Exs. O-T (police reports); *see*

11  *also* Tr. at 309 (testimony of Mr. Schwartz).  If police officers in marked cars had been giving chase

12  before Sgt. St. Amour, reports from these police officers would likely have been filed; at the very

13  least, these officers would have been mentioned in the police reports of record.[3]  They were not.  In

14  light of the above, this Court finds that there were no marked police cars pursuing Mr. Pakes until

15  Sgt. St. Amour started giving chase.  Thus, consistent with Judge Walker's September 27 order, and

16  Judge Walker's interpretation of § 2800.2, conviction under § 2800.2(a) was at best a long shot.

17    At the evidentiary hearing herein, Mr. Gibbons-Shapiro (the prosecutor) took issue with

18  Judge Walker's construction of "pursuit" for purposes of § 2800.2(a).  *See* Tr. at 554-56 (testimony

19  of Mr. Gibbons-Shapiro).  However, he did not offer any legal authority in support of his position,

20  nor did, for that matter, the state.  Moreover, even if it could not be conclusively determined that

21  Judge Walker's construction of "pursuit" was assured, there was at the very least a very strong

22  argument to support that construction of the term.  Even Mr. Gibbons-Shapiro testified that what

---

[2] Nor did the state present any evidence as to additional traffic violations (warranting a point) that were committed by Mr. Pakes or any additional evidence as to driving by Mr. Pakes that rose to the level of willful or wanton disregard for the safety of persons or property.  Mr. Schwartz, an expert who testified on Mr. Pakes's behalf, credibly testified that a conviction under § 2800.2(a) was unlikely given that there were not three traffic violations (warranting a point) after the pursuit began and that there was no willfulness or wantonness.  *See* Tr. at 290-91 (testimony of Mr. Schwartz).

[3] As explained during the preliminary examination, Officer David Gonzalez -- whose car Mr. Pakes hit -- was not in a marked police car.  In fact, he was not on duty.  Resp.'s Ex. 2 (CT 49-50).

United States District Court

For the Northern District of California

1    constituted "pursuit should have been left to the jury to decide and that Mr. Chacon could have

2    argued to the jury that "'pursuit' commenced only after St. Amour started giving chase." *See* Tr. at

3    557-58 (testimony of Mr. Gibbons-Shapiro).  Therefore, as Judge Walker found, at the very least,

4    Mr. Chacon should have informed Mr. Pakes of the "'dearth of legal authority'" on the interpretation

5    of "pursuit" under § 2800.2(a).  VRW Order at 9/27/06, at 17 (quoting *People v. Maguire*, 67 Cal.

6    App. 4th 1022, 1031 (1998)).

7    As to the factual question whether Mr. Chacon did inform Mr. Pakes that he could not be

8    convicted of § 2800.2 or that there was at least a dearth of legal authority on the interpretation of

9    "pursuit" that afforded him a defense to the 2800.2 claim, the Court finds that Mr. Chacon did not so

10   inform Mr. Pakes.  On this point, the Court finds Mr. Chacon's testimony that he did inform Mr.

11   Pakes lacks credibility.  The Court also finds credible the testimony of Mr. Pakes and his mother,

12   Marilyn Pakes.  In addition to the Court's evaluation of the witnesses' demeanor, the Court takes

13   note of the following in support of its conclusion that Mr. Chacon failed to so inform Mr. Pakes:

14   (1)    Mr. Pakes and his mother testified credibly that Mr. Chacon told them that Mr. Pakes would

15          likely be convicted of *both* felony police evasion and felony child endangerment at trial and

16          that he would be sentenced to 50 years to life.  *See* Tr. at 391-92, 438 (testimony of Mr.

17          Pakes); Tr. at 384-86 (testimony of Mr. Pakes's mother).

18   (2)    Exhibit X, submitted by Mr. Pakes, corroborates the above testimony of Mr. Pakes and his

19          mother.  *See* Pet.'s Ex. X (letter).  Exhibit X is a letter that Mr. Pakes wrote to his father in

20          May 2003, several months after he was sentenced.  In the letter, Mr. Pakes stated that, had he

21          gone to trial, he "probably" would have gotten 50 years to life.  It is unlikely that Mr. Pakes

22          wrote this letter simply to substantiate a claim of ineffective assistance of counsel because

23          the letter was written *before* he had the opportunity to consult with appellate counsel.  *See*

24          Tr. at 439-40 (testimony of Mr. Pakes).

25   (3)    The plea bargain that Mr. Pakes received also corroborates the above testimony of Mr. Pakes

26          and his mother.  Under the plea, Mr. Pakes received a sentence (excluding the one year

27          sentence for the prison prior) of 25 years to life, the same sentence that he would have

28          received at trial had he been convicted of felony child endangerment but acquitted of felony

**United States District Court**

For the Northern District of California

1  evasion of the police.  The fact that Mr. Pakes gained nothing substantively from the plea[4]

2  corroborates the conclusion that Mr. Pakes thought he would get 50 years to life if he

3  rejected the plea and went to trial.

4  (4)  There is nothing in Mr. Chacon's case file, including his subject matter file on § 2800.2,

5  indicating that he did any research or thought about this particular issue in this case.  Resp.'s

6  Ex. 1(c) (Pakes § 2800 file).

7  (5)  Mr. Chacon did not say anything to the district attorneys on the case about the "pursuit"

8  defense, even at the in-chambers trial conference.  *See, e.g.*, Tr. at 567-68 (testimony of Mr.

9  Gibbons-Shapiro) (stating that he could not recall whether Mr. Chacon brought up this issue

10  at the in-chambers trial conference; but adding that, "under the common practice for talking

11  about these things in chambers, . . . [i]t seems less likely than -- not -- that we would have

12  actually had a more full discussion of the actual elements and how those might have played

13  out").

14  (6)  Mr. Chacon prepared no in limine motion or 995 motion on the "pursuit" defense even

15  though there would have been a strategic advantage -- and no correlative risk -- of doing so.

16  Indeed, Mr. Schwartz testified that had he been representing Mr. Pakes, he would have

17  brought a 995 motion "to see whether there [were] sufficient facts that you could get to a

18  jury."  Tr. at 315 (testimony of Mr. Schwartz).  Even if the § 2800.2(a) count were not

19  dismissed, the district attorneys would be forced to flesh out their position regarding the

20  count.  *See* Tr. at 316 (testimony of Mr. Schwartz).)

21  (7)  Mr. Chacon prepared no jury instruction on the meaning of "pursuit" under § 2800.2(a).

22  Although Mr. Chacon gave reasons as to why, in general, he would not prepare jury

23  instructions until after trial began, *see, e.g.*, Tr. 73-74 (testimony of Mr. Chacon), this

24  evidence has some probative value on the question.

25  (8)  At the evidentiary hearing, Mr. Chacon testified that he did not think that the defense could

26  mount a successful defense to the § 2800.2 charge.  *See* Tr. at 207 (testimony of Mr. Chacon)

27  _____

28  [4] For a discussion of the lack of any real advantage on the *Romero* motion by pleading guilty, see Part IV.A, *infra*.

**United States District Court**
For the Northern District of California

1  (stating that he told Mr. Pakes that the prosecution would have a hard time with proving

2  felony evasion of the police but adding that "I thought that they could still try to prove the

3  three Vehicle Code violations, and that if they did, that they would convict him."). Thus, it

4  is unlikely that Mr. Chacon raised with Mr. Pakes the availability of the defense (*i.e.*, the

5  "pursuit" defense) to the § 2800.2(a) charge.

6      The Court concludes that, by failing to inform Mr. Pakes about the substantial defense he had

7  to the § 2800.2(a) charge, Mr. Chacon "misinformed him of the likelihood of being convicted under

8  § 2800.2," and thus his "advice amounted to a gross mischaracterization of the likely sentence

9  combined with erroneous advice of the probable outcome of trial." VRW Order of 9/27/06, at 17

10  (citing *Iaea*, 800 F.2d at 865).

11  B.      Multiple Punishment for Single Criminal Objective (Cal. Pen. Code § 654)

12      California Penal Code § 654 provides in relevant part that

13          [a]n act or omission that is punishable in different ways by different
             provisions of law shall be punished under the provision that provides
14          for the longest potential term of imprisonment, *but in no case shall the
             act or omission be punished under more than one provision.* An
15          acquittal or conviction and sentence under any one bars a prosecution
             for the same act or omission under any other.

16

17  Cal. Pen. Code § 654(a) (emphasis added). Mr. Pakes argues that, even if he had been convicted at

18  trial of both felony evasion of the police and felony child endangerment, § 654 would have barred

19  multiple punishment for both crimes. According to Mr. Pakes, Mr. Chacon's performance was

20  deficient because Mr. Chacon did not tell him that § 654 would bar multiple punishment and

21  therefore the plea bargain he entered -- dismissal of the § 2800.2(a) charge in exchange for a guilty

22  plea to the § 273a(a) charge -- was worthless.

23      As Judge Walker indicated in his September 27 order, § 654 bars multiple punishment when

24  a course of criminal conduct is indivisible,[5] and "[d]etermining [w]hether a course of criminal

25

26          [5] *See also People v. Hicks*, 6 Cal. 4th 784, 789 (1993) (noting that § 654 "literally applies only
27  where [multiple] punishment arises out of multiple statutory violations produced by the same act or
     omission" but that "its protection has been extended to cases in which there are several offenses
28  committed during a course of conduct deemed to be indivisible in time") (internal quotation marks
     omitted).

United States District Court

For the Northern District of California

1   conduct is divisible . . . depends on the intent and objective of the actor."  VRW Order of 9/27/06, at

2   18 (internal quotation marks omitted).  "[I]f all of the offenses were merely incidental to, or were the

3   means of accomplishing or facilitating one objective, defendant may be found to have harbored a

4   single intent and therefore may be punished only once."  *Hicks*, 6 Cal. 4th at 789 (internal quotation

5   marks omitted).

6         In his September 27 order, Judge Walker rejected the state's argument that Mr. Pakes

7   harbored two separate intents in his violation of § 2800.2(a) and § 273a(a).  Both crimes were

8   committed "only as part of a single, larger criminal intent: to escape the scene of the highway

9   accident to the supposed safety of his father's house."  VRW Order of 9/27/06, at 19.  Therefore, §

10   654 would bar multiple punishment for both the felony police evasion and felony child

11   endangerment charges.  The Court finds that the evidence presented at the evidentiary hearing

12   confirms Judge Walker's assessment.  At the evidentiary hearing, both Mr. Gibbons-Shapiro and

13   Mr. Schwartz testified that it was likely that § 654 would have stayed one of the felony sentences

14   had Mr. Pakes been convicted of both felony evasion of the police and felony child endangerment.

15   *See* Tr. at 466 (testimony of Mr. Gibbons-Shapiro); Tr. at 295 (testimony of Mr. Schwartz).  No one

16   testified to the contrary, and for good reason: in the police reports, Mr. Pakes is said to have stated

17   that he fled the scene because he knew that it was a condition of his parole not to associate with

18   children.  *See, e.g.*, Pet.'s Exs. Q, S (police reports).  Mr. Gibbons-Shapiro testified that this is what

19   the district attorney believed in prosecuting the case, *see, e.g.*, Tr. at 454, 560 (testimony of Mr.

20   Gibbons-Shapiro), and the evidence from the preliminary examination bears this out -- *e.g.*, Mr.

21   Pakes tried to get Adriene to duck during the case to keep her out of view.  *See* Resp.'s Ex. 2

22   (Prelim. Exam. at 21, 25) (testimony of Adriene).

23         The Court acknowledges that, at the evidentiary hearing, Mr. Pakes claimed to have a

24   different reason for fleeing the scene.  Mr. Pakes -- as well as his father and brother -- stated that he

25   fled the scene because he felt physically threatened by the actions of the person whose car he had hit

26   (*i.e.*, the off-duty police officer).  *See* Tr. at 397 (testimony of Mr. Pakes) (stating that "the person I

27   had bumped had gotten verbally abusive with me . . . and the person had chased me"); Tr. at 273-75

28   (testimony of Mr. Pakes's father) (indicating that Mr. Pakes told him that the person got out of his

1   car, yelled at Mr. Pakes, and shook his fist at Mr. Pakes); Tr. at 365 (testimony of Mr. Pakes's

2   brother) (stating that the person was "acting irrationally and out of control").  However, Mr. Pakes's

3   testimony as to this point lacks credibility.  It is inconsistent with his statements to the police, made

4   shortly after the accident occurred.  It is inconsistent with the undisputed testimony that he tried to

5   get Adriene to duck from view.  Moreover, Officer Gonzalez, the off-duty police officer, indicated at

6   the preliminary examination that he did not have a chance to get out of the car before Mr. Pakes fled

7   the scene.  *See* Resp.'s Ex. 2 (Prelim. Exam. at 50) (testimony of Officer Gonzalez).  Officer

8   Gonzalez was not cross-examined and impeached on this point.  Accordingly, the Court finds it

9   likely that the trial court would have found that Mr. Pakes had a single objective in fleeing and that

10   his course of conduct was indivisible.  Thus, § 654 would have barred multiple punishment for the

11   evasion and endangerment charges and thus would have prevented a 50-to-life sentence.

12       This Court further finds that Mr. Chacon did not inform Mr. Pakes that "§ 654 might bar

13   conviction and punishment under two separate statutes for the same conduct."  VRW Order of

14   9/27/06, at 20.  Mr. Chacon's testimony that he did so notify Mr. Pakes is not credible.  As discussed

15   in Part III.A, *supra*, Mr. Pakes believed that he was likely to be convicted of both felony police

16   evasion and felony child endangerment and be sentenced to 50 years to life.  Mr. Pakes would not

17   have had that belief had he been informed that § 654 would likely have prevented such a sentence.

18   Moreover, there is nothing in Mr. Chacon's case file indicating that he considered § 654.  There are

19   no notes in his file which reference the statute, nor is there a research file on the statute.  It is also

20   notable that Mr. Chacon never brought the matter up to the district attorneys or in chambers to the

21   trial judge.  *See* Tr. at 568 (testimony of Mr. Gibbons-Shapiro) (stating that he could not recall a

22   discussion of this issue with Mr. Chacon, including in chambers with the presiding judge).

23       The Court therefore finds that "trial counsel did not inform [Mr. Pakes] that § 654 might bar

24   conviction and punishment under two separate statutes for the same conduct" and thus gave Mr.

25   Pakes "a 'gross mischaracterization' of the likely sentence, falling below the level of competence the

26   Sixth Amendment requires."  VRW Order of 9/27/06, at 20 (quoting *Iaea*, 800 F.2d at 865).

27

28

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

C.    <u>Felony Child Endangerment (Cal. Pen. Code § 273a(a))</u>

Under § 273a(a), "[a]ny person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered" is guilty of felony child endangerment.  Cal. Pen. Code § 273a(a).  A person is guilty of misdemeanor child endangerment when there are "circumstances or conditions *other* than those likely to produce great bodily harm or death."  *Id.* § 273a(b) (emphasis added).  Mr. Pakes contends that he had a viable defense to the felony charge of child endangerment which his trial attorney, Mr. Chacon, failed to tell him -- more specifically, that he could defend by seeking conviction for the lesser-included offense of misdemeanor child endangerment.

In his September 27 order, Judge Walker indicated that the preliminary issue here is what was the likelihood that the trial judge would have given the jury an instruction on the lesser-included offense.  So long as "the question was close," then Mr. Chacon "had an obligation 'to inform [Mr. Pakes] of the dearth of legal authority, and to inform [Mr. Pakes] that the legal evaluation of the case was based thereon.'"  VRW Order of 9/27/06, at 21-22 (quoting *Maguire*, 67 Cal. App. 4th at 1031).

At the evidentiary hearing, Mr. Gibbons-Shapiro and Mr. Schwartz both testified that the trial court would have had a *sua sponte* obligation to give the lesser-included-offense instruction.  *See* Tr. at 460, 521-24 (testimony of Mr. Gibbons-Shapiro); Tr. at 293-94 (testimony of Mr. Schwartz); *see also People v. Rogers*, 39 Cal. 4th 826, 866 (2006) (stating that the trial court has an obligation to give an instruction on a lesser-included offense "'if there is evidence that, if accepted by the trier of fact, would absolve the defendant of guilt of the greater offense but not of the lesser'").  There was no testimony to the contrary.  Mr. Gibbons-Shapiro further testified that, had the trial court failed to do so, then he himself would have urged the trial court to give such an instruction in order to prevent reversible error.  *See* Tr. at 521-25 (testimony of Mr. Gibbons-Shapiro).

**United States District Court**
For the Northern District of California

1     The above evidence, by itself, establishes that there was a strong likelihood that the trial

2  court would have give an instruction on the lesser-included offense.  In addition to the undisputed

3  testimony, the facts clearly support the giving of the instruction because conviction of a lesser-

4  included misdemeanor offense was possible under the facts of the case.  The case did not involve a

5  high-speed chase.  Although it is undoubtedly risky (not to mention unlawful) to drive on the

6  shoulder at 40-50 mph while other traffic is moving at 30-35 mph, weave in and out of traffic at

7  those speeds, drive the wrong way on a one-way surface street for one block, and drive a child

8  passenger who is not belted, a jury could still have concluded that the prosecution had not proven

9  beyond a reasonable doubt that the "'probability of *serious* injury is *great*.'"  *People v. Odom*, 226

10  Cal. App. 3d 1028, 1033 (1991) (emphasis added).  Mr. Schwartz credibly testified that this would

11  have been a good case to raise reasonable doubt as to whether there was a "great" likelihood of

12  "serious" bodily injury.  *See* Tr. at 291-92 (testimony of Mr. Schwartz).  He testified that many

13  motorists commonly encounter instances of this kind of driving.  *See* Tr. at 320 (testimony of Mr.

14  Schwartz) (noting that driving the wrong way on a one-way street is not an uncommon occurrence

15  and does not "always equate to death or imminent likelihood of serious bodily injury").  Moreover,

16  there is a possibility that the lesser offense could have resulted from a compromise jury verdict.  *See*

17  Tr. at 292-93 (testimony of Mr. Schwartz).

18     The Court acknowledges Adriene's testimony at the preliminary examination that, while Mr.

19  Pakes was driving the wrong way on the one-way street, there were on-coming cars (*see* Resp.'s Ex.

20  2 (Prelim. Exam. at 24-25) (testimony of Adriene), and that, if believed, this would have diminished

21  the likelihood of a misdemeanor conviction.  But her testimony does not appear to be credible on

22  this point.  A jury could have found that her perceptions were distorted given her excited state of

23  mind at the moment.  *See id.* (Prelim. Exam. at 23) (testimony of Adriene) (stating that she was

24  screaming and felt scared); *see also* Tr. at 307-08 (testimony of Mr. Schwartz).  Moreover, this

25  testimony by Adriene is completely uncorroborated.  *See also* Tr. at 462, 503 (testimony of Mr.

26  Gibbons-Shapiro) (conceding that this part of Adriene's testimony was not corroborated).  In fact,

27  none of the police reports, including that written by Sgt. St. Amour, mentions this fact or any near

28  collision.  *See, e.g.*, Pet's Ex. O (police report by Sgt. St. Amour).  Surely, such a significant fact

United States District Court

For the Northern District of California

1  would have been reported.  Adriene's credibility regarding this matter was especially doubtful given

2  that her testimony about multiple marked police cars in pursuit was likewise problematic.  *See also*

3  Tr. at 504 (testimony of Mr. Gibbons-Shapiro) (acknowledging that defense counsel would make

4  this argument to the jury).  The Court thus concludes that the trial court would likely have instructed

5  the jury on the lesser-included offense of misdemeanor child endangerment.

6  　　　　As to the factual question of whether Mr. Chacon informed Mr. Pakes of the possibility of a

7  misdemeanor rather than a felony conviction, this issue is a closer question than those presented

8  above.  Mr. Pakes's father and mother testified that they thought that the plea bargain and

9  subsequent *Romero* motion could have resulted in a misdemeanor conviction.  *See*, *e.g.*, Tr. at 261

10  (testimony by Mr. Pakes's father) (stating that Mr. Chacon "was going to recommend to my son to

11  plead guilty" and "he would try to maneuver the Court into reducing it to some misdemeanor, with a

12  *Romero* hearing"); Tr. at 268 (testimony by Mr. Pakes's father) ("I remember [Mr. Chacon] one time

13  saying that, 'Oh, I got a good judge . . .' and that he felt that he could be able to . . . get the judge to

14  lower . . . to a misdemeanor"); Tr. at 270-71 (testimony by Mr. Pakes's father) (noting the same); Tr.

15  at 383-84 (testimony by Mr. Pakes's mother) (stating that Mr. Chacon told her that, "if my son pled

16  guilty, there could possibly be a charge that could be dropped and it would be reduced to a

17  misdemeanor"); Tr. at 385 (testimony by Mr. Pakes's mother) (noting the same).  Although not

18  accurate (since the *Romero* motion would only have eliminated one strike prior), it suggests that

19  perhaps the possibility of a misdemeanor may have been mentioned in some context by Mr. Chacon.

20

21  　　　　However, the Court nonetheless finds that Mr. Chacon did not inform Mr. Pakes of this

22  possibility.  Although Mr. Chacon testified that he did tell Mr. Pakes about this possibility, Mr.

23  Pakes and his mother testified to the contrary on this point.  Having observed the witnesses'

24  demeanor, the Court finds the Pakeses' testimony on this point more credible than Mr. Chacon's.

25  　　　　Moreover, the Court's finding that Mr. Chacon failed to tell Mr. Pakes about the possibility

26  of a misdemeanor conviction is again corroborated by the fact that Mr. Pakes appeared convinced

27  that he would get 50 years to life if convicted at trial.  This indicates that Mr. Pakes was not aware at

28  the time of the plea of the possibility of conviction for misdemeanor as opposed to felony

United States District Court

For the Northern District of California

1    endangerment.  Moreover, in his presentation of the case to the trial court in chambers, there is no

2    evidence that Mr. Chacon argued for a misdemeanor conviction.  *See* Tr. at 568 (testimony of Mr.

3    Gibbons-Shapiro) (stating that he could not recall whether Mr. Chacon said anything during the in-

4    chambers conference with the presiding judge about this issue).  In fact, at the evidentiary hearing

5    herein, Mr. Chacon testified that, based on the facts he ascertained from his investigation, the §

6    273a(a) charge did not "look good," Tr. at 82 (testimony of Mr. Chacon), and that the lesser-

7    included offense would have been a "tough sell."  Tr. at 83 (testimony of Mr. Chacon).  Mr. Chacon

8    also testified that the likelihood of a felony conviction was "very high."  Tr. at 93 (testimony of Mr.

9    Chacon); *see also* Tr. at 95 (testimony of Mr. Chacon) (stating that conviction was "very, very

10   likely"); Tr. at 143 (testimony of Mr. Chacon) (same).  Thus, it would appear from Mr. Chacon's

11   own testimony that he did not give the lesser-included-offense defense much credence.  *See also* Tr.

12   at 168-69 (testimony of Mr. Chacon) (stating that conviction on misdemeanor child endangerment --

13   *i.e.*, instead of felony child endangerment -- was "very, very unlikely" and that an argument that

14   there was not a great likelihood of serious bodily injury was not "very plausible").  This suggests

15   that Mr. Chacon did not raise the defense with Mr. Pakes.

16           The Court acknowledges that Mr. Chacon did have a general research file on § 273a which

17   contained a handwritten citation to the *Odom* case (although not an actual copy of *Odom*).  *See*

18   Resp.'s Ex. 1(d).  However, this is not persuasive evidence that Mr. Chacon considered and then

19   informed Mr. Pakes of the defense.  The § 273a research file was a "generic" file, *i.e.*, a file not

20   particular to this case, but a subject matter file kept in the course of his general practice, and there is

21   nothing in writing indicating when the *Odom* notation was made.  *See* Tr. at 50 (testimony of Mr.

22   Chacon); Resp.'s Ex. 1(d) (§ 273 file).  Because the file was not turned over to Mr. Pakes's habeas

23   counsel until some time after October 2003, *see* Tr. at 49-51 (testimony of Mr. Chacon); Pet.'s Ex. L

24   (letter), the notation could have been made after Mr. Chacon's work on Mr. Pakes's case.

25   Moreover, the notation makes no reference to the relevance or significance of *Odom*.  Apart from

26   this one handwritten citation to *Odom*, there is nothing in Mr. Chacon's records evincing any

27   awareness or study of the misdemeanor defense in Mr. Pakes's case.

28

United States District Court

For the Northern District of California

1    The Court also acknowledges that, during the allocution at the plea hearing, Judge Lee

2    specifically asked Mr. Pakes the following questions -- "Have you had enough time to discuss this

3    case thoroughly with your attorney?" and "Did the two of you talk about the specific elements the

4    D.A. would have to prove against you as well as the possible defenses that you might have?" -- to

5    which Mr. Pakes responded, "Yes, I have sir" and "Yes, he did, sir."  Resp.'s Ex. 3 (Plea Hrg. at 6).

6    At the evidentiary hearing, Mr. Pakes initially stated on cross-examination that he was answering

7    Judge Lee's questions truthfully.  *See* Tr. at 426-28 (testimony of Mr. Pakes).  Later, however, he

8    backtracked and explained that he was only saying "yes" because Mr. Chacon told him to respond

9    that way -- *i.e.*, he was taking his cues from Mr. Chacon during the allocution.  *See* Tr. at 427-29,

10   432-33, 436-37 (testimony of Mr. Pakes).  The Court does not find the latter portion of Mr. Pakes's

11   testimony credible.  The testimony is inconsistent with his initial answers on cross-examination.  In

12   addition, Mr. Pakes hesitated and equivocated on the stand herein in giving the latter testimony.

13   Furthermore, it is notable that, at the plea hearing, Mr. Pakes did not give a simple "yes" response to

14   Judge Lee's questions, as one might expect if he was answering purely on cue.  His actual responses

15   -- "Yes, I have sir" and "Yes, he did, sir" -- appear more volitional and spontaneous rather than

16   dictated and rehearsed.

17        Moreover, as the Supreme Court held in *Blackledge v. Allison*, 431 U.S. 63 (1977), "the

18   representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any

19   findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent

20   collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity."  *Id.*

21   at 73-74.

22        However, even assuming that Mr. Chacon had some discussion with Mr. Pakes about the

23   specific elements the prosecution would have to prove and the possible defenses to the charges as

24   Mr. Pakes arguably acknowledged in his response to Judge Lee, that does not establish that Mr.

25   Chacon imparted to Mr. Pakes information about the specific misdemeanor defense at issue here.[6]

26   Nor does it establish that Mr. Chacon -- if he discussed the misdemeanor defense with Mr. Pakes --

27   ───────────

28   [6] The Court's ruling in this regard applies as well to its finding that Mr. Pakes was not informed
of the defense to § 2800.2(a) and the bar on multiple punishment under § 654.

United States District Court

For the Northern District of California

1  did so adequately.  In other words, Mr. Pakes could well have had an *incomplete* understanding of

2  the charges and all available defenses even though, in his own mind, he believed himself fully

3  informed.  Based on the above, including Mr. Pakes's evident belief that he would likely have been

4  convicted and sentenced to 50 years to life at trial, the Court finds that Mr. Pakes was not fully

5  informed of his defenses, even if he believed that he had been so informed at the time of the plea.

6         In sum, the Court finds that there was a strong likelihood that "the trial court would . . . have

7  instructed the jury on the lesser included offense of misdemeanor child endangerment and that his

8  counsel [Mr. Chacon] acted beyond the range of professional competence in failing to inform [Mr.

9  Pakes] of that possibility."  VRW Order of 9/27/06, at 22.  The Court also finds Mr. Chacon did not

10  inform Mr. Pakes about the viability of this defense.  Accordingly, Mr. Chacon's "recommendation

11  that [Mr. Pakes] plead guilty to a third strike felony where a conviction for a lesser included

12  misdemeanor was also possible was a further 'gross mischaracterization' of the likely outcome,

13  given that a conviction for misdemeanor child endangerment would not have triggered application of

14  California's three strikes law."  *Id.* at 22 (quoting *Iaea*, 800 F.2d at 865).

15  D.    *Romero* Motion

16         As Judge Walker noted in his September 27 order, "[i]n *People v. Superior Court (Romero)*,

17  13 Cal. 4th 497 (1996), the California Supreme Court held that trial courts retain discretion under

18  California Penal Code § 1385(a) to strike prior felony conviction allegations in cases brought under

19  California's three strikes statute 'in furtherance of justice.'"  VRW Order of 9/27/06, at 22-23.  Mr.

20  Pakes argues that Mr. Chacon's performance was deficient because Mr. Chacon told him that Judge

21  Lee is a lenient judge likely to grant a *Romero* motion (which would result in less than a life

22  sentence) when, in fact, Judge Lee is a harsh judge and there was no chance that Judge Lee or any

23  other judge would grant *Romero* relief given Mr. Pakes's record and the circumstances underlying

24  the current charges.

25         Judge Lee ultimately did deny the *Romero* motion filed by Mr. Chacon.  However, before the

26  motion was brought, Judge Lee

27             "told [petitioner's] attorney that [he] would give serious consideration
             to the *Romero* motion."  At that time, he also stated to petitioner that
28             the "circumstances of this [child endangerment] crime are relatively

United States District Court
For the Northern District of California

1   moderate, maybe even almost minor," and that petitioner's future
    appeared to be "reasonably promising."  But Judge Lee had not yet
2   "read the police reports or the preliminary examination or anything
    like that," and he stressed, "I can't make promises."

3

4   VRW Order of 9/27/06, at 23-24.

5       In his September 27 order, Judge Walker explained that the factual issue to be explored with

6   respect to the *Romero* motion is as follows: whether Mr. Chacon gave Mr. Pakes advice that

7   "clouded [his] understanding of Judge Lee's on-the-record statements and/or failed to advise him

8   adequately of the relative risks of going to trial versus gambling on the outcome of a *Romero*

9   motion."  VRW Order of 9/27/06, at 24.

10      There is, once again, a square conflict in testimony between Mr. Pakes and Mr. Chacon as to

11  whether Mr. Pakes was told that Judge Lee would likely grant the *Romero* motion.  In the May 2003

12  letter that Mr. Pakes wrote to his father, Mr. Pakes stated that Mr. Chacon advised him "to plead

13  guilty to the endangerment and and [sic] the DA would *not* throw in the evading arrest, and then we

14  can take our chances at a Romero hearing, cause he said I had a lot in my favor and he felt the judge

15  would drop a strike."  Pet.'s Ex. X (letter) (emphasis in original).  For the reasons previously stated,

16  the Court finds this letter persuasive evidence of Mr. Pakes's true knowledge and state of mind.

17      At the very least, as discussed below, the Court finds persuasive Mr. Schwartz's testimony

18  that the chances of Judge Lee granting the *Romero* motion (given the facts of the case) were "[s]lim

19  to none."  Tr. at 297 (testimony of Mr. Schwartz).  Even if Mr. Chacon did not tell Mr. Pakes that

20  the trial court would probably grant the motion, the Court finds that Mr. Chacon did not adequately

21  convey to Mr. Pakes how highly unlikely it was that the trial court would grant such a motion.  The

22  Court finds that, despite Judge Lee's on-the-record statements, Mr. Pakes's understanding of the

23  likelihood of having the motion granted and the relative risks of going to trial versus gambling on

24  the outcome of the *Romero* motion was in fact clouded by Mr. Chacon's advice.

25                          **IV.   PREJUDICE**

26      As noted in Judge Walker's order of September 27, even if counsel's advice was not "within

27  the range of competence demanded of attorneys in unusual cases" (VRW Order of 9/27/06, at 24,

28  *quoting Strickland*), Mr. Pakes still must show prejudice.  Mr. Pakes can satisfy the prejudice prong

United States District Court

For the Northern District of California

1    of the *Strickland* test "by showing that there is a reasonable probability that, but for counsel's errors,

2    he would not have pled guilty and would have chosen to go to trial."  VRW Order of 9/27/06, at 25.

3    A.    Felony Count for Evasion of the Police (Cal. Veh. Code § 2800.2(a))

4          At the evidentiary hearing, Mr. Pakes testified that he would not have pled guilty if he had

5    known that he would not be convicted of evasion of the police under § 2800.2(a).  *See* Tr. at 393

6    (testimony of Mr. Pakes).  The Court credits this testimony.  That finding is supported by the fact

7    that if Mr. Pakes could not have been convicted for evasion of the police, and thus only subject to

8    conviction for felony child endangerment, his sentence after trial would only have been (putting

9    aside the prison prior one year sentence) only 25 years to life -- which is exactly what the got from

10   the plea bargain.  Therefore, the plea bargain was essentially worthless.  Mr. Pakes had nothing to

11   lose by going to trial, *except* for the possibility that a *Romero* motion made after a plea would be in a

12   better posture (*i.e.*, would more likely be granted) than a *Romero* motion made after a full trial and

13   conviction.

14         Mr. Chacon claimed that, in general, there is such an advantage.  *See, e.g.*, Tr. at 85-88, 90-

15   92, 202-03, 212-13 (testimony of Mr. Chacon); *see also* Tr. at 470-71, 473-74 (testimony of Mr.

16   Gibbons-Shapiro) (also claiming an advantage).  *But see* Tr. at 332, 334 (testimony of Mr. Schwartz)

17   (stating that whether there would be a better chance at getting a *Romero* motion granted before trial

18   is a consideration but not "the overriding consideration of whether to go to trial or not").  However,

19   any such advantage would be virtually worthless if Mr. Pakes had a slim-to-none chance of getting

20   that motion granted even after a plea rather than trial.  The Court finds that, in fact, Mr. Pakes's

21   chances of having the *Romero* motion granted were in fact slim to none and that there was no

22   material advantage in entering the plea versus going to trial with respect to the *Romero* motion.

23         In this respect, the Court finds credible and persuasive the testimony of Mr. Schwartz as to

24   why it was highly unlikely that any judge would have granted a *Romero* motion in Mr. Pakes's case.

25   *See* Tr. at 299 (testimony of Mr. Schwartz) ("I can think of no judge in the state, not only the county,

26   that would ever grant a *Romero* motion under these particulars."); *see also* Tr. at 297, 353

27   (testimony of Mr. Schwartz) (stating that the chances of Judge Lee granting the *Romero* motion

28   were "slim to none" or "zero").  First, as Mr. Schwartz testified, Mr. Pakes had two serious felony

United States District Court

For the Northern District of California

1    prior convictions. *See* Tr. at 297 (testimony of Mr. Schwartz). Judge Lee acknowledged that the

2    facts of these priors were "obviously pretty horrible." Resp.'s Ex. 3 (Plea Hrg. at 4). The

3    circumstances of the current offense, *i.e.*, being in the company of an unaccompanied 12-year-old

4    girl, were similar to the circumstances in one of the priors, which involved the molestation of Mr.

5    Pakes's 9-year-old cousin. *See also* Tr. at 297-99, 344-46, 348-49 (testimony of Mr. Schwartz). Mr.

6    Gibbons-Shapiro pointed out at the evidentiary hearing herein as he did in his recital of the facts in

7    chambers before Judge Lee (on the first day of the trial, which ultimately turned into the plea

8    hearing), Mr. Pakes's modus operandi in each situation was disturbingly similar. Both times Mr.

9    Pakes befriended the parents of the girl in order to get close to the girl. Both times he ingratiated

10   himself with the girl by giving gifts or driving lessons. Both times he started by asking the girl for a

11   kiss. Mr. Gibbons-Shapiro testified it was clear that Mr. Pakes was "grooming" Adriene for

12   molestation, just as he had groomed his 9-year-old cousin. *See* Tr. at 453 (testimony of Mr.

13   Gibbons-Shapiro).

14        Second, as Mr. Schwartz testified, Mr. Pakes was still on parole at the time of the current

15   offense and, in fact, had committed two prior parole violations prior to the event at issue. *See* Tr. at

16   297 (testimony of Mr. Schwartz); *see also* Resp.'s Ex. 1(d) (Tab 5, at 128) (probation report).

17   Moreover, in this instance, Mr. Pakes had violated a special condition of parole of which he was

18   well aware -- that he was not to be alone in the company of a minor. *See* Tr. at 297 (testimony of

19   Mr. Schwartz).

20        Thus, as Mr. Schwartz credibly testified, an analysis of the appropriate factors to consider

21   under *People v. Williams*, 17 Cal. 4th 148, 161 (1998) -- namely, the nature and circumstances of the

22   defendant's present felonies and prior serious and/or violent felony convictions, and the particulars

23   of his background, character, and prospects -- all militated strongly against granting the *Romero*

24   motion. It is extremely unlikely that a judge would have found that, under the circumstances as

25   described above, Mr. Pakes to be outside the "spirit" of the three strikes law and hence treated as

26   though he had not previously been convicted of one or more serious felonies. *Id.* Indeed, at the

27   *Romero* hearing, Judge Lee stated:

28

**United States District Court**

For the Northern District of California

1  The [California] Supreme Court [in *Williams*] told me that, among
2  other things, I'm supposed to consider the facts and circumstances of
   the strike priors. And here I think even Mr. Chacon concedes they are
3  about as ugly a set of facts that we've come across in quite some time
   in this county. They're horrible. They're horrendous. They're things
   that should not have happened in anybody's worst nightmare, and
4  happened to that cousin of yours. Not a lot of good things going there.

5  Resp.'s Ex. 7 (*Romero* Hrg. at 268).

6  While further commenting on Mr. Pakes's apparent lack of insight and lack of ability to

7  control his impulses, Judge Lee also noted that Mr. Pakes's prospects for continued good behavior

8  were not favorable given his two prior violations of parole. *See id.* (*Romero* Hrg. at 269).

9  Judge Lee then went on to state:

10  Of course I'm supposed to consider the circumstances of this
    offense, and there is much truth in Mr. Chacon's remarks that had you
11  not been convicted of what you had been convicted of, and had you
    not had who you had with you, this might have well been resolved at a
12  misdemeanor level of some sort of chase or traffic offense. But you
    know what? You can't separate those, because you weren't convicted
13  of the traffic offenses. You stand before me convicted by plea of
    endangering the health of a minor. This minor was a 12-year-old girl,
14  and that is frightening. Out of all the human beings in this county that
    could have been in that car, it was a 12-year-old girl who had no idea
15  that you had brutally molested, forcibly, another preadolescent female
    not very long ago. She was someone who was entrusted to you by
16  parents who had not been told that you had brutally molested another
    preadolescent female in this county not so very long ago.
17
    There's nothing to suggest to me that when you get out on
18  parole, that it won't happen again, except that I don't think you're
    going to get out on parole any time soon.
19
    Accordingly, I'm unable to find that you are outside the spirit
20  of the three-strikes law. Indeed, I suspect that you are well within the
    spirit of the three-strikes law. The Romero motion is, accordingly,
21  denied.

22  *Id.* (*Romero* Hrg. at 270-71).

23  Except for Mr. Pakes's interview with probation, all of the above facts relied upon by Judge

24  Lee were known at the time of the plea and were unchangeable. While a better interview with

25  probation might have helped Mr. Pakes's case, the Court concludes that the circumstances of the

26  prior conviction, the circumstances of the current offense, and the parole violations were

27  overwhelming factors that, in any reasonable assessment by counsel, would have made the prospect

28  of obtaining relief under *Romero* extremely unlikely.

**United States District Court**
For the Northern District of California

Notably, Mr. Gibbons-Shapiro testified that he could not recall any instance in which Judge Lee had previously granted a *Romero* motion.  *See* Tr. at 553 (testimony of Mr. Gibbons-Shapiro) (stating that, in his three strike cases before Judge Lee, Judge Lee had not granted a *Romero* motion).  Nor could Mr. Gibbons-Shapiro recall any instance in which Judge Lee had granted a *Romero* motion which involved similar circumstances, *i.e.*, a prior sex offense involving a minor and a current offense with circumstances suggestive of sexual design on another child.  *See* Tr. at 553-54 (testimony of Mr. Gibbons-Shapiro) (stating that he did not know whether Judge Lee had ever granted a *Romero* motion on similar facts -- *i.e.*, priors involved sexual conduct with a minor and current offense involved another minor and social contact).  The state presented no evidence of any other Santa Clara Superior Court judge granting a *Romero* motion under such circumstances.

In light of the above, there was no material advantage for Mr. Pakes to enter the plea.  The *Romero* motion would likely have suffered the same fate whether made after plea or after trial.  Since, for the reasons stated above, Mr. Pakes would not have been sentenced to more than 25 years to life for felony child endangerment if convicted at trial (conviction on the § 2800.2(a) count was highly unlikely), he gained nothing from the plea.  Accordingly, the Court concludes that there are no "other circumstances surrounding the pre-trial proceedings and negotiations would have diminished the reasonable probability of [Mr. Pakes's] insisting on going to trial."  VRW Order of 9/27/06, at 25.

The Court also credits Mr. Pakes's testimony that he would have opted for trial because Mr. Pakes previously rejected a plea bargain that offered him a 25-to-life sentence.  In March 2002, when the felony charges against Mr. Pakes were child annoyance or molestation, *see* Cal. Pen. Code § 647.6(c)(2), and child endangerment, *see id.* § 273a(a) -- *i.e.*, the felony charge for evasion of the police had not yet been added -- Mr. Pakes was potentially subject to a maximum sentence of 50 years to life if convicted at trial.  The prosecution offered Mr. Pakes a sentence of 25 years to life if he would plead guilty to the § 647.6(c)(2) count, but Mr. Pakes rejected that offer.  *See* Resp.'s Ex. 1(a) (Tab 10); Tr. at 230-31 (testimony of Mr. Chacon).  At the evidentiary hearing, Mr. Chacon suggested that Mr. Pakes rejected the offer only because, if he pled guilty to the § 647.6(c)(2) count, his chances with a *Romero* motion were "slim to none," Tr. at 231 (testimony of Mr. Chacon), but,

United States District Court

For the Northern District of California

1  as discussed above, that would be true if he pled guilty to the § 273a(a) count as well.  Although Mr.

2  Chacon testified Mr. Pakes was afraid to go to trial and wanted to plea, the Court does not credit that

3  testimony.  Mr. Pakes had already shown a willingness to reject a plea bargain in favor of trial.

4       Finally, even if Mr. Pakes had expressed reluctance to go to trial, as Mr. Chacon so testified,

5  *see, e.g.*, Tr. at 99 (testimony of Mr. Chacon) (stating that "Mr. Pakes was not someone eager to go

6  to trial"); Tr. at 113 (testimony of Mr. Chacon) (stating that Mr. Pakes "was very afraid of going to

7  trial"), that reluctance would have been infected by Mr. Chacon's failure to fully inform Mr. Pakes

8  of his defenses.  Both Mr. Pakes and his family (at least his mother) were under the mistaken belief

9  that he would likely be convicted on both felony evasion of the police and felony child

10  endangerment and sentenced to a minimum of 50 years to life in prison.  So viewed, the issue,

11  therefore, is not whether Mr. Pakes was reluctant to go to trial; rather, the issue is whether there is a

12  reasonable probability that Mr. Pakes would have rejected the plea bargain and opted for trial had he

13  been fully informed of his defenses and the likely outcome at trial versus a plea bargain.  The Court

14  finds that there is such a reasonable probability.

15       The Court notes that, in *Hill*, the Supreme Court stated that, "[i]n many guilty plea cases, the

16  'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing

17  ineffective-assistance challenges to convictions obtained through a trial."  *Hill*, 474 U.S. at 59.  Of

18  course, unlike an ineffective assistance claim directed at performance at trial, the prejudice inquiry

19  in an ineffective assistance claim relating to a guilty plea "focuses on whether counsel's

20  constitutionally ineffective performance affected the outcome of the plea process," *Hill*, 474 U.S. at

21  59, not the probable outcome of trial.  Thus, the merits of a potential defense is relevant only insofar

22  as it informs whether "there is a reasonable probability that, but for counsel's errors, [the petitioner]

23  would not have pleaded guilty and would have insisted on going to trial."  *Id.*  "[W]hether the

24  affirmative defense likely would have succeeded at trial" in turn informs whether the affirmative

25  defense "would have led counsel to change his recommendation as to the plea."  *Id.*  Hence,

26  although the prejudice inquiry in this context resembles the prejudice inquiry in ineffective

27  assistance challenges to convictions obtained through a trial, the two are not identical.  In some

28  circumstances, a court could well conclude that there is a reasonable probability that the defendant

United States District Court

For the Northern District of California

1   would have opted for trial even if it was less than certain or even probable that the affirmative

2   defense would have succeeded at trial.  Where, as here, the defendant had *nothing* to gain by

3   entering the plea, proof that an affirmative defense had a reasonable or even decent chance of

4   success at trial could be sufficient to prove prejudice in the context of a plea.

5          In any event, whatever the precise standard may be, the Court concludes that it is met here.

6   As Judge Walker's order of September 27 indicates, the § 2800.2(a) defense likely would have

7   succeeded given the probable definition of "pursuit" and the lack of three traffic violations

8   (warranting a point) incurred during the pendency of the pursuit.  There was substantial merit to the

9   defense.

10  B.     Multiple Punishment for Single Criminal Objective (Cal. Pen. Code § 654)

11         As above, Mr. Pakes can satisfy the prejudice prong of the *Strickland* test "by showing that

12  there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and

13  would have chosen to go to trial."  VRW Order of 9/27/06, at 25.

14         At the evidentiary hearing, Mr. Pakes testified credibly that he would not have pled guilty if

15  Mr. Chacon had told him that § 654 would bar multiple punishment if he were convicted of both

16  felony evasion of the police and felony child endangerment at trial.  *See* Tr. at 393 (testimony of Mr.

17  Pakes).  The same analysis above, *see* Part IV.A, *supra*, is applicable here.  That is, if § 654 would

18  bar multiple punishment for both crimes, then at most, Mr. Pakes could be sentenced to only 25

19  years to life -- which is exactly what the got from the plea bargain.  Therefore, the plea bargain was

20  essentially worthless.  Mr. Pakes had nothing to lose from going to trial, *except* for the possibility

21  that a *Romero* motion made after a plea would be in a better posture (*i.e.*, would more likely be

22  granted) than a *Romero* motion made after a full trial.  However, there was no material advantage for

23  Mr. Pakes to enter the plea because the *Romero* motion would likely have suffered the same fate

24  whether after plea or after trial  Thus, the Court finds there is a reasonable probability that Mr. Pakes

25  would have rejected the plea bargain and chosen to go to trial if Mr. Chacon had informed him about

26  the § 654 defense.

27         Moreover, similar to above, to the extent that the prejudice inquiry depends on whether the §

28  654 defense likely would have succeeded at trial, that requirement has been met.  All of the

1  witnesses agreed that Mr. Pakes would not likely have been punished for both crimes had he been

2  convicted of both.

3  C.    Felony Child Endangerment (Cal. Pen. Code § 273a(a))

4        As above, Mr. Pakes can establish prejudice for purposes of the *Strickland* test by showing

5  that "there was a 'reasonable probability' that [he] would have pled guilty absent counsel's failure to

6  advise him of the possibility of conviction of a lesser included misdemeanor."  VRW Order of

7  9/27/06, at 28.

8        At the evidentiary hearing, Mr. Pakes testified credibly that he would not have pled guilty if

9  he had been told about the possibility of being convicted only of the lesser-included misdemeanor

10  offense for child endangerment.  *See* Tr. at 393 (testimony of Mr. Pakes).  This claim is credible

11  given that, under the plea bargain, Mr. Pakes agreed to a felony sentence for child endangerment (25

12  years to life) instead of a misdemeanor sentence, which for the reasons stated above, is no better

13  than the worst result he would have obtained at trial.  In short, he had nothing to lose by going to

14  trial and seeking conviction on the misdemeanor count.

15        To the extent that the prejudice inquiry depends on whether the misdemeanor defense likely

16  would have succeeded at trial, that requirement has been met here.  Although a closer question, there

17  is a reasonable chance that a jury would have convicted Mr. Pakes of a misdemeanor rather than a

18  felony.  As Mr. Schwartz testified, arguably, Mr. Pakes's driving was not much worse than that

19  which is not uncommonly encountered by motorists -- *e.g.*, driving the wrong way on a one-way

20  street is not an uncommon occurrence and does not "always equate to death or imminent likelihood

21  of serious bodily injury."  Tr. at 320 (testimony of Mr. Schwartz).  And as found above, Adriene's

22  testimony about the most dangerous action taken by Mr. Pakes -- driving the wrong way on a one-

23  way street into oncoming traffic -- was not credible.

24  D.    *Romero* Motion

25        In his order of September 27, Judge Walker concluded that, even if Mr. Chacon had rendered

26  ineffective assistance in providing Mr. Pakes with advice about the likelihood of success on a

27  *Romero* motion, Mr. Pakes suffered no prejudice directly therefrom because "Judge Lee clearly told

28  [Mr. Pakes] that he would only decide the *Romero* motion after reviewing [Mr. Pakes's] full record,

United States District Court

For the Northern District of California

1    including the probation report containing a description of [his] past convictions." *Id.* at 28-29.

2    Given that Mr. Pakes stated at the plea hearing that no one made any promises about the case and

3    that Judge Lee clearly explained to him what he would consider in deciding the *Romero* motion,

4    "[Mr. Pakes] suffered no prejudice from counsel's potentially inaccurate advice regarding the

5    *Romero* motion alone." *Id.* at 29.

6        Judge Walker also found, however, that "[Mr. Pakes] might be able to establish prejudice if

7    his counsel failed to inform him that Judge Lee would decide the *Romero* motion based on [Mr.

8    Pakes's] entire record -- including his past convictions -- whereas a jury deciding only the § 273a

9    charge might never have learned of these convictions." *Id.*  Judge Walker thus concluded that, at the

10   evidentiary hearing, "[Mr. Pakes] may attempt to prove that his counsel failed to advise him of the

11   likely inadmissibility of his prior convictions at trial . . . and that he would not have pled guilty if he

12   had received this advice from this attorney." *Id.*

13       The first question for this Court therefore is whether Mr. Chacon failed to advise Mr. Pakes

14   that the prior convictions were likely inadmissible at trial.  In this regard the Court first finds that the

15   prior convictions were in fact likely inadmissible at trial.  Evidence of Mr. Pakes's parole violation -

16   - and hence the convictions underlying the parole -- was irrelevant because child endangerment is a

17   general intent crime requiring no evidence of motive, and, in any event, would likely have been

18   excluded as highly prejudicial under California Evidence Code § 352.

19       Mr. Gibbons-Shapiro testified that, in his opinion, evidence of the prior convictions or at

20   least the fact that Mr. Pakes was subject to a parole condition that he not be alone with a child would

21   have been admitted at trial.  *See* Tr. at 454-57, 559-63 (testimony of Mr. Gibbons-Shapiro).

22   However, as stated above, child endangerment is a general intent crime to which motive is

23   irrelevant.  The issue is whether the conduct engaged in by the defendant may, as an objective

24   matter, be found to have created a great "'probability of serious injury.'"  *Odom*, 226 Cal. App. 3d at

25   1033.  Mr. Gibbons-Shapiro testified that, nonetheless, motive (*i.e.*, to avoid being caught with

26   Adriene in violation of his parole condition) was relevant to credibility -- to show that, because he

27   was so motivated, he did in fact drive recklessly.  But in this case, Mr. Pakes would not have

28   testified at trial.  *See* Tr. at 130, 133 (testimony of Mr. Chacon)).  Thus, his credibility would not

United States District Court

For the Northern District of California

1    have been at issue.  Even if Mr. Pakes's motive might have had some probative value as to how he

2    actually drove, that probative value was extremely marginal.  Except for the discrepancies as to

3    whether Mr. Pakes encountered any oncoming traffic, there was no real dispute as to how he drove.

4    The marginal, if any, probative value of Mr. Pakes's motive would have been clearly outweighed by

5    the obvious prejudicial effect of admitting the prior conviction for molestation.  Although Mr.

6    Gibbons-Shapiro testified that he believed that at least the fact that Mr. Pakes was on parole subject

7    to a special condition (*i.e.*, that he not be alone with a minor) would have come in, even that limited

8    evidence would have been very prejudicial.  It would not have taken much for the jury, hearing of

9    such a parole condition, to conclude that Mr. Pakes was a convicted sex offender.  Thus, the

10   evidence of the prior convictions and the parole condition likely would have been excluded as

11   irrelevant and/or unfairly prejudicial under California Evidence Code § 352.  *See also* Tr. at 328-29

12   (testimony of Mr. Schwartz) (stating that the trial judge would have excluded even evidence that Mr.

13   Pakes fled the scene because he was on parole (*i.e.*, not stating what the prior conviction was for) as

14   too highly prejudicial).

15        The Court further finds that in fact Mr. Chacon failed to inform Mr. Pakes about the likely

16   inadmissibility of the prior convictions at trial.  In April 2002, Mr. Chacon received a letter from the

17   prosecution, which stated that the prosecution intended to introduce the prior convictions at the

18   preliminary hearing and at trial.  *See* Pet.'s Ex. M (letter).  Mr. Chacon never responded in writing to

19   the letter, nor did he file a written opposition to the prosecution's motion in limine.  *See* Pet.'s Ex. U

20   (motion).  Although Mr. Chacon moved to continue the trial in August 2002 in order to, *inter alia*,

21   move to strike the priors, *see* Resp.'s Ex. 1(a) (Tab 4), he never made any such motion.  *See* Tr. at

22   70 (testimony of Mr. Chacon).  These facts indicate that, at the very least, the issue was not a high

23   priority for Mr. Chacon and therefore lessens the likelihood that he would have brought up the issue

24   with Mr. Pakes.  Mr. Pakes testified that he was not aware that the jury would not hear about his

25   prior convictions at trial.  *See* Tr. at 394 (testimony of Mr. Pakes).  The Court finds that Mr. Chacon

26   did not inform Mr. Pakes about the likely inadmissibility of the prior convictions at trial.

27        As to whether Mr. Pakes would not have pled guilty had he received this advice from Mr.

28   Chacon, there is no evidence on this particular point.  Mr. Pakes did not so testify, and it is not

United States District Court

For the Northern District of California

1   obvious that this point alone was so material that it in and of itself would likely have led Mr. Pakes

2   to reject the plea bargain.  Accordingly, the Court finds that there is not a reasonable probability that

3   Mr. Pakes would have refused the plea and opted for trial on this issue alone.

4          However, the fact that Mr. Chacon failed to inform Mr. Pakes about the likely inadmissibility

5   of the prior convictions strengthens the above findings of prejudice flowing from the failure of Mr.

6   Chacon to fully inform Mr. Pakes of his affirmative defenses (*i.e.*, the § 2800.2(a) defense, the § 654

7   defense, and the misdemeanor defense).  The fact that Mr. Pakes could have proceeded to trial with a

8   likelihood that the priors would have been excluded enhanced the chance of a favorable outcome

9   with the jury and thus increased the chances that Mr. Pakes, if adequately informed, would have

10  opted for trial.

## V.   FINDINGS

12         The Court's findings above are summarized as follows.

13  A.     Felony Count for Evasion of the Police (Cal. Veh. Code § 2800.2(a))

14         1.     There were no other marked police cars giving chase to Mr. Pakes before he passed

15  Sgt. St. Amour.

16         2.     Mr. Chacon failed to inform Mr. Pakes that he could not be convicted of the §

17  2800.2(a) charge.

18         3.     Mr. Chacon did not inform Mr. Pakes of the dearth of legal authority on the

19  interpretation of § 2800.2(a).

20         4.     Mr. Pakes was not aware that he had a substantial defense for the § 2800.2(a) charge.

21         5.     Mr. Chacon had an opportunity to bring a motion under California Penal Code § 995

22  to test or clarify the § 2800.2(a) charge, but failed to do so.

23         6.     Mr. Pakes's "trial counsel misinformed him of the likelihood of being convicted

24  under § 2800.2," and "trial counsel's advice amounted to a gross mischaracterization of the likely

25  sentence combined with erroneous advice on the probable outcome of a trial," thereby failing to

26  meet the level of competence required under the Sixth Amendment.  VRW Order of 9/27/06, at 17.

27         7.     If Mr. Pakes had been sufficiently informed about the likelihood of being convicted

28  of the § 2800.2 charge, there is a reasonable probability that he would have insisted on going to trial.

B.      Multiple Punishment for Single Criminal Objective (Cal. Pen. Code § 654)

8.      Section 654 would probably have barred multiple punishment had Mr. Pakes been convicted at trial of both felony charges of evasion and endangerment.

9.      Mr. Chacon failed to inform Mr. Pakes prior to entering the plea bargain that "§ 654 might [or would likely] bar conviction and punishment under two separate statutes for the same conduct," and thus gave Mr. Pakes a "'gross mischaracterization' of the likely sentence, falling below the level of competence the Sixth Amendment requires."  VRW Order of 9/27/06, at 20.

10.     If Mr. Pakes had been sufficiently informed about the likelihood that § 654 would bar multiple punishment, there is a reasonable probability that he would insisted of going to trial.

C.      Felony Child Endangerment (Cal. Pen. Code § 273a(a))

11.     It is probable that the trial judge would have given the jury an instruction on the lesser-included offense of misdemeanor child endangerment.

12.     Mr. Chacon failed to inform Mr. Pakes about the possibility that "the trial count would likely have instructed the jury on the lesser included offense of misdemeanor child endangerment," and thus "his counsel acted beyond the range of professional competence."  VRW Order of 9/27/06, at 22.

13.     Mr. Chacon failed to advise Mr. Pakes about the possibility of conviction of a lesser included misdemeanor and thus imparted a "'gross mischaracterization' of the likely outcome, given that a conviction for misdemeanor child endangerment would not have triggered application of California's Three Strikes Law."  VRW Order of 9/27/06, at 22.

14.     If Mr. Pakes had been advised of the possibility of conviction of a lesser included misdemeanor child endangerment, there is a reasonable probability that he would have insisted on going to trial.

D.      *Romero* Motion

14.     Mr. Chacon did not adequately convey to Mr. Pakes how highly unlikely it was that the trial court would grant the *Romero* motion after the plea.

15.     Mr. Chacon gave Mr. Pakes advice "that clouded petitioner's understanding of Judge Lee's on-the-record statements and [ ] failed to advise him adequately of the relative risks of going to trial versus gambling on the outcome of a *Romero* motion."  VRW Order of 9/27/06, at 24.

16.     The chances of winning the *Romero* motion were slim to none.

17.     Given the on-the-record comments of Judge Lee, Mr. Pakes was not prejudiced by Mr. Chacon's failure to fully advise him on the *Romero* motion.  *See* VRW Order of 9/27/06, at 29.

18.     Mr. Chacon failed to inform Mr. Pakes "that Judge Lee would decide the *Romero* motion based on petitioner's entire record – including his past convictions – whereas a jury deciding only the § 273a charge might never have learned of those convictions."  VRW Order of 9/27/06, at 29.

19.     It is likely that the prior convictions and the special parole condition that Mr. Pakes not be alone with a minor would have been excluded from the jury at trial.

20.     There is not a reasonable probability that Mr. Pakes would have refused the plea and opted for trial had he been so informed of the likely inadmissibility of his prior convictions (putting aside the effect of that failure upon the prejudice resulting from Mr. Chacon's failure to inform Mr. Pakes of his other defenses).

## VI.     RECOMMENDATION

Based on the above, this Court recommends that Mr. Pakes's petition for a writ of habeas corpus be granted because Mr. Pakes was not afforded effective assistance of counsel when he entered the plea bargain, and he was prejudiced by counsel's deficient performance.

Dated:  January 29, 2007

_____
EDWARD M. CHEN
United States Magistrate Judge